And our last case this morning is Elizabeth Huston v. Hearst Communications. Mr. Ravindran, whenever you're ready. Your Honor, good morning and may it please the Court. Arun Ravindran on behalf of Plaintiff Appellant Elizabeth Huston. By legislative act, every individual in this state has a right to control and choose whether and how to use his or her identity for commercial purposes. That statute, the IRPA, plainly speaks of a right of control for commercial purposes. Not just for endorsement purposes, but for commercial purposes generally. And it gives three specific examples. My client's contention is that the Hearst Corporation, which is one of the largest magazine publishers in the United States, stripped her and every other of its Illinois subscribers of that right for its profit by offering for sale and selling lists containing the identities and personal reading information of Hearst subscribers. So counsel, your argument is that when the statute talks about public use, it's use for any purpose? How would you define public use then in terms of your argument? So, Your Honor, public use as a specific precursor to commercial purpose is, to our mind, the holding out or making publicly available of identity information, which we believe are well-pleaded allegations in this complaint. Well, I guess my question is, your reading of the statute takes out public, right? What you're saying is that the statute would prohibit any use of a person's identity information for commercial purposes or for sale. And so what's the point of having the word public there? I would disagree with the premise. I don't believe that our reading divorces the statutory language from the word public use or alternatively holding out. Well, is there a non-public use for commercial purposes that you think that you can think of? A non-public use? Right. So my question to you is, why have the word public there, isn't it? Doesn't your reading or interpretation of the statute basically render that particular word null and void or without any use? And so, and you're saying that no, that your reading of the statute actually considers and gives meaning to public use. And I guess my question is, how does it give meaning to public use? Well, I can speak to the conduct issue here, Judge, and I can hopefully situate that within the concept of public use. What was pled in this case was that a magazine company offered for sale on the internet to the market writ large. And so, our pleading is rife with averments to that, to sort of in that vein. So if Herff's company had only offered to sell the mailing list to one person that the company knew, that would not be a violation of the statute? So I would look to the court, the Illinois Court of Appeals decision in Toronto to answer that inquiry, Judge. In that case, you had a small community here downstate Illinois, and you had a magazine of small subscription. And basically, in the course of the case, it was established that a very small amount of people were given the opportunity to purchase this media packet, maybe less than 100 folks. And the court said, that's not a public use because the statute is not ambiguous about what public means. It has its ordinary meaning. But there's a second component of that, Judge, which we haven't talked about yet this morning, which is holding out. And the Toronto Court said holding out means something different than public use because the legislature specifically used the words holding out as opposed to public use. Before we go any further, I wonder if you would speak to the issue of standing. What's the injury here? Well, Judge, this was not raised, but of course, we're obliged to look at that. And how imminent is the injury here to your client? You know, I would say that the standing issues in this case are very much in line with the standing issues that have presented themselves in the Biometric Information Privacy Act context, which is you have a monopoly right. Every individual has a monopoly right over the commodification and commercialization of his or her identity. There is no need to prove any inherent value. You just have that right. And because it's very difficult for regular folks to prove the injury, the statute provides us with liquidated damages. So I would say, Judge, following TransUnion, because there are also common law analogs that go along with the rights protected by this statute, the rights to invasion of privacy towards where this whole line of this right comes from. I would say under that TransUnion analysis, standing is met. But as you pointed out, Judge, that wasn't raised below. Yeah, but it's, you know, it's critical to our jurisdiction. And I just have some sense that there's a degree of remove from the impending injury at this point. I mean, that's all you're alleging, that down the line, your client or others similarly situated may have gained an injury. We usually look for a little closer tie on the injury or the prospective injury than we have here. So I would distinguish my position from what I believe that the point you're advancing is, Judge. I don't believe it's down the line. I don't think it's speculative. I think it's immediate. I think when an identity is co-opted and commercialized, the harm is immediate. Standing has come up in other cases involving list brokering, involving right of publicity cases. Again, not briefed because it didn't come up. But I don't believe any court or more courts than not have opted, have found that standing is not a basis to keep claims like this out of federal court. But essentially, I believe, returning to the point that I was discussing with Judge Lee, that this appeal presents the issue of whether Ms. Huston stated a claim under this IRPA statute. The district court determined that she did not plead commercial purpose such that her conduct falls within the ambit of IRPA. But this issue and the other issue, which is properly before the court, which is the public use component, are resolved by reference to the statutory language. The first issue of commercial purpose is determined by the IRPA statute's reference to three categories of commercial conduct, which we have referred to in this litigation as prongs. The first prong of commercial conduct covers the use of an individual's identity on or in connection with the offering for sale or sale of a product. That's what's principally at issue here. First, conduct violates this part of the statute in at least two ways. First, Ms. Huston has pledged that her identifying information was on a product offered for sale and was in fact sold, meaning they put her name on a list and then sold that list. The list was the product. Alternatively, her conduct violated the commercial purpose part of the statute by selling her identity information in connection with the sale of a separate product, namely her prior subscription to Good Housekeeping magazine. This makes sense under the statutory rubric because, again, under prong one, commercial purpose means on or in connection with the offering for sale or sale of a product, merchandise, goods, or services. Counsel, you agree, though, I take it, that Hearst never actually used Ms. Huston's identity information in order to try to promote or try to get other people to buy the mailing list. I would agree that this is not a case similar to other cases where her name was previewed. Or used in any other way in order to try to induce other people to buy the mailing list. It held her out as a subscriber of Good Housekeeping magazine, which has some inherent value to the market. Generally speaking, but I mean her identity information as defined by the statute was not used by Hearst in order to promote or, in other words, or part of a sale of the product. That's correct, and that's why the thrust of our argument is not under prong two, the endorsement part of the statute. The thrust of our argument is under part one, the use on or in a product. How do you distinguish endorsement in prong two from the offering for sale in prong one? Because offering for sale is not meant to promote the use of a separate product. Offering for sale is I'm offering this list of people's names to you to purchase, right? The second prong, which deals with endorsement, and endorsement the courts in this state have found necessarily involves a separate product. But under our theory, it's under prong one that we're traveling. There is no need for a separate product. One of the problems with the case law as it's developed is that the obvious case, the That fits so squarely into prong two that it makes sense to treat it solely under prong two. There's also a prong three. And if we were to say that our understanding of IRPA is conditioned on this idea of endorsement for the purpose of promoting products, prong three would cease to have any sense whatsoever because prong three involves fundraising, the use of identities in furtherance of fundraising. Fundraising is not a product. It's not a merchandise. It's not a good or a service. So for those reasons, I believe that if the statute is faithfully applied under prong one, we have stated a claim. I see I'm out of time. Thank you. Mr. Donilon. Jonathan Donilon for Hearst. I'll please the court. This claim is well outside the right of publicity really by any measure and really starts, Judge Lee, with your question about where is the public use. Let's start with the title of the statute. Plaintiff in this case wants to parse the language of the statute. This is the right of publicity. Publicity is core to the statute. It's part of its essence. It's the touchstone. And it imbues it right down to the public use or holding out. And this court has held another context, which we've cited, that where you have a modifier just as a grammatical matter, public modifies both use and holding out. But even if the court was not to agree with that, was not to agree with that grammatical rule, was not to agree with the way the restatement has spoken about the role of publicity and the role of public use, which has been embraced by the Illinois courts in defining the scope of this right, still the holding out would mean something more than a private transaction. And the Trannel case, which was pointed to by plaintiff's counsel, makes that very point. The court there, even in saying that public doesn't modify holding out, found that public use meant it was available to the entire community of 300,000 people. But the holding out was to only the 31 people. But that was still holding out. And it's distinguishable also because that was on a media kit, which was provided for the purpose of selling advertising in a newspaper, right on the cover of it, using the plaintiff's photograph. We have none of that in this particular case. None of it goes to the specific right of publicity. And that right isn't just the right to control a name in all instances. It's a very specific right, which goes to the right to control the use of that name for commercial purposes to sell something else. That's been the historical understanding of the right of publicity, which is reflected in the common law. And the Illinois legislature, when it passed the Right of Publicity Act, was very clear that they were codifying that common law. And there was already a case law that existed, the Dwyer case, in which it held that a list rental, in that case the American Express Corporation, did not state a cause of action. So that's brought into the understanding of the right of publicity here. So when we read these words, we have to look at the full context. And that context starts with the title. It's a right of publicity. And it brings in all of the understanding of what a right of publicity is, which goes back to the restatement, goes back to the body of common law and the case law. And this court here has never found anything, nor has any other court in this circuit, in the district court level, that even approaches the use here. What is most striking about the allegations of the complaint is the complete absence of any allegation about any public use, or any use at all, quite frankly, of the plaintiff's name, much less in a way that would cause somebody to purchase something or to transact as a matter of business. It wasn't used to entice. It wasn't used to encourage. It wasn't used to endorse. It wasn't used for any of those purposes. It's in the nature of a list or a directory. How do you respond to the argument that all of those things that you just recited fall under prong two, as counsel put it, and prong one has offering for sale or sale has to mean something different? Prong two is promotion, advertisement. As this court well knows from the Jordan case, that is very tricky stuff, and now it's become even more so with the rise of influencers and the like. But there we are talking about brand promotion. Prong one is actually, I think, a harder case for them to meet because that's really about branding itself. That is putting a person's name or a likeness on a product, which is going to be used to induce somebody to purchase that product, or putting it on a product which is offered for sale. Here it's completely backwards. Somebody who is buying a list of Good Housekeeping subscribers is buying it because of the name Good Housekeeping, not because of the name of anybody who is listed within that list. So there is no use, public or otherwise, in the context of selling this or inducing somebody to enter into a transaction, which goes to the fundamental understanding of what is required by the right of publicity here and is reflected in all of the cases. The Neiman case, the Dobrowolski case, the Thompson case, the Lucas case, these are all cases that were cited by Judge Mim, and they're cases which reflect this understanding of what's required here. So there was no use of her name, public or otherwise, no holding out of her name in connection with trying to sell that list. Does Hearst inform subscribers that the list, that the subscribers list is available for sale? Your Honor, it is, and it is made through the terms of use. This isn't part of, obviously, the complaint, but through the terms of use, there are multiple ways for subscribers to opt out of that. And if somebody doesn't wish to receive marketing advertisements, they can sign up, similar to the do not call list, with the direct marketing association to take themselves off of any lists. So there are other ways for people to control whether or not they are going to be receiving mail or whether or not their names are going to be going out. That's not what this statute is about. This statute here deals with a very specific property right in how your name may be used in a commercial setting to induce or entice somebody to buy something. That's how it originated, the right of publicity, and that's how it's been reflected throughout these cases. So this one is really on the far end of the spectrum. And in a recent case that was just decided last week by the District of Vermont involving a question about the right of publicity, the Illinois right of publicity statute, where the court dismissed the claim and the plaintiff was represented by the same plaintiff's counsel in this case, it's noted in the court's decision that there was a concession that this was a novel. This is an absolutely novel claim because this goes so far outside the realm of what has been recognized as a right of publicity. If you want to think of the outer edges of the right of publicity, the free preview cases are on that outer edge. And if you look at those cases, some of the motions to dismiss have been granted, I think the majority of them, but some of them they have not. It really depends on whether or not, number one, identities are being used in a public way, and also whether or not they're being used to induce the purchase of something else. In those cases, typically subscription services, which are not simply the person's identity. Here we have none of those allegations, so we aren't even on that outer periphery. We are well outside the scope of the statute. There's no policy that's advanced here by recognizing the novel claim and to moving that outer boundary outside. It wouldn't serve the policy goals of the right of publicity to protect against uses of identities, just use of a name in and of itself in this particular case. And if the Illinois legislature intended to do that, they would have done that. That's not what they've done, and that's not what's reflected in the statute. So the only way for the plaintiffs to prevail here really is to parse the words to such an extent where they take them entirely out of context, from the title to the history to the body of law of this statute, and that just would do real violence to the statute. I would say Judge Mim correctly applied the precedent in this particular case. There are recent cases from this circuit which he applied at the district court level. He relied on the legislative history and the right of publicity precedent. All of it goes in one direction when you apply in the proper context. His decision should be affirmed. Thank you. Thank you. Mr. Ravindran. I think your time had expired, but you can have a minute in rebuttal if you have something to add. Thank you, Judge. Judge Mim's decision should not be affirmed because he looked to glean something about the legislative intent when there was no need to do so whatsoever. Contrary to what was just presented, our claim does not require that the words of the statute be parsed beyond recognition. Our claim requires that prong one of the statute be faithfully applied. The Vermont case that you heard about, there was a suggestion that the claim is novel. The claim is outside of the heartland because of the reason that most of these archetypal cases involve celebrities. However, as Judge Shaw discussed in the first Wroblewski case in 2017, there is legislative history within this statute, which supports the idea that the Illinois legislature intended the right of publicity to endure much more broadly than to only celebrities. I would also say as to the Dyer case, I believe Judge Shaw's commentary on that would be instructive for this court as well. He said the Dyer case was a pre-ERPA case whose essential aspects of the statute are different than the common law in that the common law was based on the notion of a right of protection of the right of publicity to safeguard one's own monetary benefits in a name. The statute as it's currently formulated doesn't have any requirement that we inherit monetary value. So for that reason I would say the Dyer case is distinguishable. Thank you. Thank you very much. Our thanks to all counsel. The case is taken under advisement and that concludes our calendar today. The court is in recess.